IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MAURICE WILLIAMS,**

    **Petitioner,**

    v.                        **CIVIL ACTION NO. 1:04CV136**
                                **(Judge Broadwater)**

**K. J. WENDT, Warden,**[1]

    **Respondent.**

## REPORT AND RECOMMENDATION/OPINION

### I. INTRODUCTION

On June 28, 2004, the *pro se* petitioner, Maurice Williams, an inmate at FCI-Gilmer, Glenville, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241. The petitioner argues the respondents have erred in denying him parole and requests that the Court order his release on parole.

By Order entered on March 8, 2005, the Court ordered the respondent to show cause why the writ should not be granted. On April 6, 2005, the respondent filed Response to Petition for Writ of Habeas Corpus. On April 29, 2005, the petitioner filed Response to Government's Opposition to Petition Petitioner's Motion Pursuant to 28 USC §22241.

This matter, which is pending before me for initial review and report and recommendation pursuant to LR PL P 83.09, is ripe for review.

---

[1] At the time the petitioner filed his §2241 petition, B.A. Bledsoe was the warden at FCI-Gilmer. However, K.J. Wendt, is the current warden. Consequently, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Warden Wendt should be substituted for B.A. Bledsoe as the respondent.

## II. FACTS

In 1992, the petitioner was convicted in the Superior Court of the District of Columbia of possession of a firearm during a crime of violence and voluntary manslaughter while armed.[2] On September 25, 1992, the petitioner was sentenced to an aggregate term of imprisonment of 10- 30 years. The petitioner became eligible for parole on April 16, 2000.[3]

The petitioner had an initial parole hearing on December 20, 2000. The hearing examiner determined that the petitioner had a base point score of 6, a one point increase for negative institutional behavior and a 2 point decrease for superior program achievement for a total point score of 5. The examiner recommended that parole be denied and that a rehearing be held in October 2001, after the service of 18 months from the parole eligibility date of April 16, 2000.

On January 8, 2001, the Executive Hearing Examiner ["EHE "] disagreed with the awarding of 2 points for Superior Program Experience. The EHE opined that the petitioner should only receive 1 point for Ordinary Program Achievement because although the petitioner had obtained his GED and completed one vocational training program he has been in custody for over 9 years. The EHE further recommended a rehearing in April 2002, which is at the top of the guideline range at 24 months.[4] However, another addendum was issued on January 9, 2001, wherein an individual named

---

[2]According to the D.C. Initial Hearing Summary dated December 20, 2000, the petitioner and three other individuals "were driving around searching for an individual whom they apparently intended to harm by shooting that individual." Shots were fired at the individual, but he was missed and another individual was killed by the gunshot.

[3]The Bureau of Prisons has determined that the petitioner's projected release date is January 28, 2012, and his full term expiration date is December 18, 2021.

[4]The Total Guideline Range is made up of the following components: (1) base point score guideline range; (2) months required to serve to parole eligibility date; (3) disciplinary guideline range; and (4) superior program achievement award.

"Shoquist" opined that a 5 year continuance was warranted and that a rehearing should occur in April 2005. Shoquist opined that such continuation was justified because the petitioner is "a more serious risk than indicted by [his] point score. " Shoquist further opined as follows:

> [T]he evidence described in the presentence report clearly shows that you were the armed assassin who fired two shots from the rear passenger seat of the vehicle driver by Christopher Sterling. These shots killed the victim of this drive-by shooting. Your lack of remorse and denial of this crime has not changed during the time you have spent in prison. Although you were 17 at the time, your actions were those of a cruel, professional killer who must be regarded as a long-term risk through adulthood. There is no evidence of the substantial rehabilitative progress that would be necessary for the Commission to find your release on parole to be consistent with the public safety.

On January 23, 2001, the Commission issued a Notice of Action denying parole and continuing the petitioner for a rehearing in April 2005, after the service of 60 months from his parole eligibility date of April 16, 2000. The Commission noted that with a base point score of 6, the rehearing guidelines indicate holding a rehearing within 18-24 months from the petitioner's parole eligibility date. However, the Commission departed from the guideline range of 18-24 months because the petitioner was found to be "a more serious risk than indicated by [his] Base Point Score..."

On March 6, 2002, the petitioner filed a petition for writ of habeas corpus in the United States District Court for the District of Columbia challenging the denial of his parole.[5] The petitioner was transferred to the District of South Carolina and his habeas case was also transferred

---

[5] In his petition, the petitioner asserted that (1) the Commission violated the Ex Post Facto Clause when it used its Guidelines, instead of D.C. parole regulations at his parole hearing; (2) the Commission was required to apply the D.C. parole regulations because D.C. Code §24-20-9 was not repealed by the National Capital Revitalization and Self-Government Improvement Act of 1997; (3) the Commission "double counted" certain aggravating factors in determining that he would not be entitled to a second parole hearing for five years; and (4) the Commission used an inaccurate factual summary of his crime in denying him parole.

to the District of South Carolina. While his habeas petition was pending, on January 6, 2003, the Commission issued a Notice of Action reopening the petitioner's case and vacating its January 23, 2001 Notice of Action because the hearing examiner erroneously applied the 1998 version instead of the 2000 version of the Commission's D.C. Parole Guidelines. The Commission remanded the case for a new initial hearing to apply the new version of the guidelines set forth at 28 C.F.R. §2.80.

Upon remand, the hearing examiner determined that the Total Guideline Range was 144-170 months and recommended a reconsideration hearing in April 2005. The EHE reviewed the recommendation and changed the Total Guideline Range to 132-158 months and recommended a reconsideration hearing in February 2006.

On March 5, 2003, the Commission issued a Notice of Action continuing the petitioner to a reconsideration hearing in February 2006, after the service of 36 months from his new initial hearing date of February 5, 2003. Because the petitioner served 135 months as of March 18, 2003, he will have served 170 months by the time of his reconsideration in February 2006. While the continuance took the petitioner above his Total Guideline Range of 132-158 months, the Commission determined that an upward departure was warranted because the petitioner is " . . . a more serious risk than indicated by your Base Point Score of six."

On August 7, 2003, the United States Magistrate Judge in the District of South Carolina recommended dismissal of the petitioner's habeas petition because (1) the Commission's new guidelines at 28 C.F.R. §2.80 did not constitute an ex post facto increase in the petitioner's punishment; (2) the Commission's application of its new guidelines at 28 C.F.R. §2.80 was within its statutory authority; (3) the Commission's decision to depart from the guidelines did not "double count" any factors already incorporated in the guidelines; and (4) the Commission did not

4

erroneously blame the homicide on him. On September 8, 2003, the court granted summary judgment in favor of the Government and dismissed the petition with prejudice.

Now, the petitioner seeks habeas relief in this Court. The petitioner disagrees with the denial of parole and contends that his First and Fifth Amendment due process rights were violated because a longer set off period was vindictively imposed at his second hearing than at the initial hearing in violation of North Carolina v. Pearce, 395 U.S. 711 (1969) and Hammond v. D.C. Parole Bd, 756 A. 2d 896 (D.C. App. 2000). The petitioner also alleges the Commission determined that his guideline range is 132-158 months but D.C. Code §24-203(a), which the Commission should have followed, provides that he only had to serve 1/3 of the maximum sentence, i.e. 10 years. He further asserts that when the Commission used its base point score to determined the guideline range, such violated due process and double counted factors already considered under D.C. Code §24-203(a).

The respondent contends that the petition should be dismissed as an abuse of the writ. In the alternative, the respondent asserts that if the petition is considered on its merits such should be denied because no presumption of vindictiveness arises from the circumstances of this case; the petitioner was not entitled to parole upon reaching his eligibility date; and parole denial is not denial of parole eligibility.

### III. ANALYSIS

**A.  Background of Commission's Involvement with D.C. Code Offenders**

On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632

(D.C.Cir.1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2). The Revitalization Act provided that the Commission was to follow the parole law and regulations of the District of Columbia, but also granted the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C.Code Ann. § 24-131(a)(1); Simmons v. Shearin, 295 F.Supp.2d 599, 602 (D.Md.2003).

Subsequently, the Commission established amendments and revisions to the 1987 guidelines of the D.C. Board of Parole, which had remained in effect until August 5, 1998. See 28 C.F.R. §2.70, et. seq. On July 21, 1998, the Commission's amended version of the parole rules and guidelines were published in the Federal Register at 63 FR 39172 and are found at 28 C.F.R. §2.70 et. seq. The Commission's decision-making guidelines are found at 28 C.F.R. §2.80. These guidelines expanded the "total point score" that is contained in the 1987 guidelines of the D.C. Board of Parole. 28 C.F.R. §2.80. Pursuant to these guidelines, the prisoner is assigned a "salient factor score" which is "one of the factors used in calculating parole eligibility."[6] New guidelines went into effect on December 20, 2000.

---

[6] The salient factor score is determined by the following factors: (1) the number of prior convictions/adjudications;(2) the number of prior commitments of more than 30 days; (3) the inmate's age at commencement of the current offense/prior commitment of more than 30 days; (4) the length of recent commitment free period; (5) whether the inmates was on probation/parole/confinement/escape status at the time of the current offense; and (6) whether the inmate was 41 years of age or more at the commencement of the current offense.
 The salient factor score is then used to determine the base point score. The base point score is determined by adding the salient factor score to the scores obtained by determining whether the prisoner's current conviction involved violence against a person and whether a prior offense involved felony violence. The base point score allows the Commission to calculate a Total Guideline Range, which is the total time a prisoner would be expected to serve until he would be suitable for parole.

## B. Abuse of Writ

The respondent asserts that the petition should be dismissed because the petitioner is rearguing the claims he presented to the District of South Carolina and while his vindictiveness claim was not presented to the District of Carolina, it could have been. Specifically, the respondent states that between the time the Notice of Action was issued on March 5, 2003, until the United States Magistrate Judge issued his Report and Recommendation on August 7, 2003, the petitioner could have filed an amended petition.

In McCleskey v. Zant, 499 U.S. 467 (1991), the Supreme Court explained that the abuse of writ doctrine generally precludes inmates from relitigating the same issues in subsequent applications or from raising new issues in subsequent habeas petitions. The Court held that after the government properly raises the issue of abuse of the writ with regard to a second application for habeas relief, "the burden to disprove abuse then becomes petitioner's." Id. at 494. The Court further explained that in order to excuse the petitioner's failure to raise the new claims, the petitioner must show cause for failing to raise it and prejudice therefrom or that a fundamental miscarriage of justice would result from a failure to entertain the claim. Id.

While McCleskey dealt with a §2254 petition, McCleskey has been applied to §2241 petitions. See Zayas v. INS, 311 F. 3d 247 (3d Cir. 2002); Griffin v. United States Parole Com'n 2003 WL 23961849, *2 (E.D.Va.2003) aff'd by Griffin v. United States Parole Com'n, 94 Fed.Appx. 993, 2004 WL 859402 (4th Cir. 2004). See also, Zakiya v. Reno, 52 F.Supp.2d 629, 634, n.8 (E.D.Va. 1999)("Although McCleskey did deal with the abuse-of-the-writ doctrine, the Supreme Court did not explicitly apply that doctrine to § 2241 petitions. Furthermore, as the Tenth Circuit indicated, successive petitions are barred 'unless the ends of justice require consideration of the

7

merits.' George, 62 F.3d at 334.").

Here, the merits of the petitioner's case were considered by the District of South Carolina. The petitioner as not shown cause or prejudice for his failure to previously raise his claim of vindictiveness before the District of South Carolina. Consequently, pursuant to McCleskey, the petitioner's §2241 petition should be dismissed as being an abuse of the writ.[7]

## IV. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be DENIED and DISMISSED WITH PREJUDICE as being an abuse of the writ.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation/Opinion to the *pro se* petitioner and the United States Attorney for the Northern

District of West Virginia.

---

[7]Because the undersigned as found that the petition should be dismissed as an abusive petition, the undersigned has not addressed the merits of the petition.

DATED: July 25, 2005

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE